**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| DENNIS FLYNN,<br><br>                Plaintiff,<br><br>  v.<br><br>DELAWARE RIVER & BAY<br>AUTHORITY, et al.,<br><br>                Defendants. | Civil No. 18-10505 (JS) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the "Motion to Preclude Plaintiff's Expert Report and Testimony" ("motion") filed by defendant Delaware River & Bay Authority ("defendant" or "DRBA") [Doc. No. 13]. The Court received plaintiff's opposition [Doc. No. 17] and defendant's reply [Doc. No. 18]. The Court exercises its discretion to decide plaintiff's motion without oral argument. See FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons to be set forth in this Memorandum Opinion and Order, defendant's motion is GRANTED in part and DENIED in part. All opinions relating to prognosis and causation contained in Dr. Skolnick's expert report are STRICKEN. Defendant's motion is DENIED as to Dr. Skolnick's findings and observations concerning plaintiff's physical examination.

Background

Plaintiff Dennis Flynn ("plaintiff") commenced this action on June 13, 2018 in the United States District Court of New Jersey, asserting various claims against defendants Delaware River & Bay Authority ("DRBA"), John Does 1-10, and The Doe Legal Entity 1-10, including causes of action under the Jones Act, 46 U.S.C. § 30104, and general maritime law. See Compl. ¶ 5-10 [Doc. No. 1]. On August 16, 2018, the parties consented to the jurisdiction of this Court to handle this matter pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. See Doc. No. 10.

Plaintiff's claim arises from an incident which allegedly took place on or about February 11, 2016. See Mot. at 1. Plaintiff was the pilot of a passenger ferry vessel and allegedly suffered injuries from an accident that occurred on the M/V Cape Henlopen. See Compl. ¶ 5. Plaintiff alleges he was thrown from his chair and suffered injuries to his shoulder and neck as a result of the accident. See Aff. of Counsel Oliver T. Barry ¶ 3 [Doc. No. 17].

At the time of the accident, plaintiff was being treated for neck problems, diagnosed as "moderate to severe degenerative discogenic disease with foraminal encroachment." Mot. at 2. On April 15, 2015, plaintiff consulted an orthopedic surgeon, Dr. Stephen Dante, for his neck condition. Id. Dr. Dante recommended

a laminectomy and fusion surgery to address plaintiff's neck complaints. Id. The record indicates plaintiff was planning to move forward with the cervical surgery to address persistent pain and worsening numbness in his fingers. Id. (citing Exs. 6, 7). On the day of the accident, ambulance records indicate plaintiff complained of injuries to his right shoulder and knee, and specifically denied neck or back pain. Id. at 3. Further, when plaintiff was taken to Cape Regional Medical Center, he only complained about his right shoulder and knee. Id. After the accident, even though plaintiff continued seeing Dr. Dante, his records do not mention the February 11, 2016 incident, nor do they indicate it was ever discussed. Id.

Fact discovery ended on March 29, 2019 and plaintiff's expert reports were due on April 30, 2019. Doc. No. 9. On or about February 5, 2019, plaintiff served a copy of the November 27, 2018 report of his trial expert, Orthopedic Surgeon Cary Skolnick, M.D. Defendant then served a narrative report from Orthopedic Surgeon Dr. Jeffrey Malumed, M.D. See Aff. of Counsel Oliver T. Barry ¶ 7. The parties' medical experts agree that plaintiff suffered a rotator cuff tear as a result of the accident. Id. ¶ 9. However, the medical experts disagree whether plaintiff suffered any aggravation of preexisting damage in his cervical spine, with complications in his left upper extremity. Id. ¶ 10.

As noted, Dr. Skolnick issued a report in which he opined on plaintiff's injuries. See Dr. Skolnick's Report ("Skolnick Rep.") [Doc. No. 13-3]. Dr. Skolnick's report contains three types of opinions: (1) present symptomology opinions; (2) prognosis opinions; and (3) causation opinions.[1] After providing a detailed review of plaintiff's medical history, Dr. Skolnick discusses plaintiff's present symptoms, the physical examination he conducted, and his diagnosis based on his physical examination. Id. at 8-11. Next, Dr. Skolnick discusses plaintiff's alleged work-related disability and states, "[a]fter this accident, [plaintiff] has been unable to work, in any regard." Id. at 11. Last, Dr. Skolnick makes conclusory statements about plaintiff's injuries and states, for example, "[t]he cervical spine, right shoulder and left upper extremity were weakened by this injury and damaged, and will be predisposed to further injury from aggravation and trauma which would not have otherwise bothered the patient prior to the accident." Id. Dr. Skolnick further opines with "a reasonable

---

[1] For purposes of clarity, Dr. Skolnick's "present symptomology opinions" refers to all information included in the report sections labeled "present symptomology," "physical exam," "records reviewed," and "diagnoses". See Skolnick Rep. at 8-11. Dr. Skolnick's "prognosis opinions" refers to all information included in the report sections labeled "discussion" and "permanency, prognosis and recommendations." Id. at 11. Dr. Skolnick's "causation opinions" refers to information included in the report section labeled "conclusion." Id. at 12.

4

degree of medical probability" that plaintiff's injuries and treatment are directly and causally related to the February 11, 2016 accident. Id. at 12. Dr. Skolnick contends the injuries sustained by plaintiff have "produced demonstrable medical evidence, of an objective nature, of restriction in the function, and in the material lessening, of the patient's working ability . . . [and] ability to fully perform activities of daily life." Id. Further, Dr. Skolnick opined "with a reasonable degree of medical certainty" that plaintiff suffered permanent injury to "the cervical spine, right shoulder and left upper extremity" as a result of the accident. Id.

Defendant moves to strike Dr. Skolnick's report contending it fails to satisfy the requirements of Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). Defendant argues Dr. Skolnick's report should be stricken because it "fails to reveal any methodology used to reach his opinions, and fails to set forth any verifiable standards or any medical evidence in the record to support his opinion. As such, it is a net opinion and should not be admitted." Mot. at 8. Defendant also argues Dr. Skolnick's report should be stricken because he fails to explain how he concluded plaintiff's injuries were caused or aggravated by the February 11, 2016 accident. Id. at 10. Defendant further argues that Dr. Skolnick has been involved in numerous cases like the

5

one at hand where courts found his report constituted net opinions and excluded his report and testimony. Id. at 12. Last, defendants argue Dr. Skolnick's report contains incorrect information about the plaintiff, specifically relating to his ability to work, which is likely to confuse the jury. Id.

In opposition, plaintiff argues that if defendant's motion is granted, it should be limited to barring testimony relating to any aggravation of the condition of plaintiff's neck but permit testimony as to the shoulder injury plaintiff suffered. See Pl.'s Opp'n at 3 [Doc. No. 17]. Plaintiff argues that because both defendant and plaintiff's experts come to the same conclusion regarding plaintiff suffering a rotator cuff tear, Dr. Skolnick should be allowed to testify about that subject matter. Id. at 2. Plaintiff further argues Dr. Skolnick's report is not a net opinion because he reviewed plaintiff's medical records and conducted a physical examination, and it is generally accepted that medical experts can reach conclusions based on a review of medical records and a physical examination of the patient. Id. at 4. Last, plaintiff argues Dr. Skolnick's testimony will assist the trier of fact in assessing what injuries or aggravation of preexisting injuries were causally related to the accident. Id. at 5.

Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony, permitting a witness "qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion, provided that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702; see generally Daubert, supra. Because Rule 702 "clearly contemplates some degree of regulation of the subjects and theories" to which an expert may testify, the Supreme Court has stated:

> [I]n order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation – i.e., "good grounds" based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

Id. at 590; see also Oddi v. Ford Motor Co., 234 F.3d 136, 144-45 (3d Cir. 2000). In practice, this requires the Court to act as a "gatekeeper" to prevent expert testimony running afoul of Rule 702 from ever reaching the jury. See Daubert, 509 U.S. at 596-97. Thus, the Court "must determine ... whether the expert is proposing to testify to (1) scientific knowledge that (2)

7

will assist the trier of fact to understand or determine a fact in issue." Id. at 592. "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93.

The Third Circuit has described Rule 702 as embodying a "trilogy of restrictions on expert testimony: [1] qualification, [2] reliability, and [3] fit." Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (quoting Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)). First, the witness must be qualified to testify as an expert, which requires "that the witness possess specialized expertise." Id. This requirement, however, has been interpreted liberally to encompass "a broad range of knowledge, skills, and training."[2] In re Paoli T.T. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994). Second, the testimony must be reliable, which demands that "the expert's opinion must be based upon the 'methods and procedures of science,' rather than on 'subjective belief or unsupported speculation.'" Daubert, 509 U.S. at 590; see Calhoun, 350 F.3d at 321. Thus, the Court must assess the "reliability of scientific evidence under Rule 702" in order to determine "its

---

[2] Defendants have not objected to Dr. Skolnick's qualifications.

8

scientific validity." Daubert, 509 U.S. at 590. Third, the expert's testimony must "fit" the case. Id. at 592. Otherwise known as the "helpfulness" standard, this requires there be "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Id. at 591-92. The fit requirement "goes primarily to relevance." Id. "[T]he expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." Schneider, 320 F.3d at 404 (citations omitted). The party that proffers the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. Daubert at 592 n.10 (citing Bourjaily v. United States, 483 U.S. 171, 175-76 (1987)).

Here, defendants primarily contest the opinions expressed by Dr. Skolnick in his report by alleging they fail to satisfy the reliability and fit requirements of Daubert. Defendants argue Dr. Skolnick's opinions lack a proper foundation and amount to net opinions, and as such, are inadmissible. The Court finds Dr. Skolnick's opinions regarding prognosis and causation leave too large a gap between the data presented and the conclusions rendered, and consequently, fail to satisfy Daubert's reliability and fit requirements. Because Dr. Skolnick's opinions on plaintiff's present symptomology are based on his physical examination of plaintiff, the Court finds they satisfy Daubert's reliability and fit requirements.

1. Qualification

Since defendants do not specifically object to Dr. Skolnick's qualifications, it will be assumed for present purposes Dr. Skolnick is qualified.

2. Reliability

The Court must decide whether the opinions offered by Dr. Skolnick are based on reliable principals and methods. In determining the reliability of expert testimony, the Court is guided by the following principles:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the nonjudicial uses to which the method has been put.

Calhoun, 350 F.3d at 321 (quoting In re Paoli, 35 F.3d at 742 n.8). However, the Court is not restricted to any "definitive checklist or test." Daubert, 509 U.S. at 593. This inquiry is "a flexible one" focusing "solely on the principles and methodology, not on the conclusions that they generate." Id. at 595. While reliability does not require "correctness," it does prohibit "too great a gap between the data and the [expert's] opinion proffered." Oddi, 234 F.3d at 146 (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)). Thus, the court "must

10

examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." Id. (quoting Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999)).

Further, the inadmissibility of net opinions is a longstanding rule that dictates exclusion of expert testimony that contains "bare conclusions, unsupported by factual evidence." Holman Enter. v. Fidelity & Guar. Ins. Co., 563 F.Supp.2d 467, 472 n. 12 (D.N.J. 2008). The net opinion rule requires an expert to give the "why and wherefore" of the opinion, rather than a mere conclusion. See Curtis v. Besam Group, No. 05-CV-2807 (DMC), 2008 WL 1732956, at * 6 (D.N.J. Apr. 10, 2008) (citing Rosenberg v. Tavorath, M.D., 352 N.J.Super. 385, 800 (N.J.Super. Ct. App. Div. 2002)). Expert testimony, therefore, is not admissible if it appears that the witness is unable to articulate a reasonably accurate conclusion, as distinguished from a mere guess or conjecture. See id. (citing Vuocolo v. Diamond Shemrock Chem. Co., 240 N.J.Super. 289, 299 (N.J.Super. Ct. App. Div. 1990)). As stated by the court in Lasorsa v. Showboat: The Mardi Gras Casino, Civ. No. 07-4321, 2009 WL 2929234, at *5 (D.N.J. Sept. 9, 2009), "[w]ithout a reliable, objective basis for [an expert's] testimony, stemming from identifiable industry standards, codes, publications or training, it must be precluded under Rule 702.".

Defendant argues Dr. Skolnick's report does not meet the element of reliability because he fails to reveal any methodology used to reach his conclusions. Mot. at 8. Plaintiff, on the other hand, argues Dr. Skolnick's report is reliable because he based his opinions on plaintiff's medical history and physical examination. Pl.'s Opp'n at 4. The Court agrees with plaintiff regarding Dr. Skolnick's opinions on present symptomology but disagrees with plaintiff regarding Dr. Skolnick's opinions on prognosis and causation. As discussed above, Dr. Skolnick's report provides his opinion on plaintiff's present symptomology based on the physical examination he conducted. The Court finds Dr. Skolnick's opinions on present symptomology are reliable because they are opinions based on the physical examination he conducted. The physical examination conducted by Dr. Skolnick plus his years of experience as an Orthopedic Surgeon allow the Court to conclude his opinions regarding plaintiff's present symptomology reasonably flow from the facts known to him.

The Court, however, agrees with defendant regarding Dr. Skolnick's opinions on prognosis and causation. As noted above, Dr. Skolnick's report includes opinions about plaintiff's work-related disability, permanency and prognosis, and causation of plaintiff's injuries. The Court finds that nothing in the record or in plaintiff's medical reports links plaintiff's cervical

spine and left upper extremity injuries to the February 11, 2016 accident.

Having read all relevant factual and medical records, the Court finds there is no material evidence indicating that plaintiff injured his cervical spine or left upper extremity when he fell on February 11, 2016. Dr. Skolnick did not articulate in his report the reason why he concluded plaintiff's injuries resulted from the incident. Dr. Skolnick also did not point to any evidence in the record to support his opinions. Further, Dr. Skolnick's report fails to rule out the possibility that plaintiff's injuries resulted from his preexisting condition and not from the February 11, 2016 incident. In fact, Dr. Skolnick does not even meaningfully address plaintiff's prior injuries and their effect on his current condition. The Court, therefore, is unable to conclude Dr. Skolnick's opinions on prognosis and causation "reliably flow from the facts known" to him. See Oddi, 234 F.3d at 146. Plaintiff's own statements make clear that plaintiff only injured his right shoulder and right knee and never complained about his neck or left upper extremity. See Mot. Ex. 9-10. The Court also finds Dr. Skolnick's opinion that plaintiff's "material loss of productivity . . . is causally related to [the] accident" is not reliable because plaintiff was able to return to work after the

accident. See Skolnick's Rep. at 11. Therefore, Dr. Skolnick's opinion is based on a false fact and is not reliable.

The Court finds plaintiff has failed to show that Dr. Skolnick's opinions regarding prognosis and causation are reliable. See In re Paoli, 35 F.3d at 743-44 (stating that the proponent of an expert report must demonstrate by a preponderance of the evidence that the expert's opinions are reliable). Therefore, the sections in Dr. Skolnick's report regarding prognosis and causation fail the reliability prong.

### 3. Fit

In contrast to the reliability prong of Daubert, the fit restriction "goes primarily to relevance," which requires the testimony "fit" the issues in dispute and assist the trier of fact in understanding them. Krys v. Aaron, 112 F. Supp. 3d 181, 190 (D.N.J. 2015) (quoting Daubert, 509 U.S. at 591). Put simply, the expert's testimony must be relevant to the case and helpful to the jury in deciding the issues therein. This "'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Schneider, 320 F.3d at 404 (quoting Daubert, 509 U.S. at 591-92).

Defendant argues Dr. Skolnick's report does not pass the test of fitness because he provides no causation analysis or explanation for the mechanics of the alleged aggravation to

plaintiff's neck or left upper extremity. See Mot. at 9. Defendant further argues Dr. Skolnick's report will not assist a jury because it discusses incorrect statements of fact about plaintiff's ability to work. Id. Plaintiff, however, argues that Dr. Skolnick's report and testimony will assist a trier of fact in comprehending the extent of plaintiff's injuries. See Opp'n at 5.

The Court disagrees with defendant's argument regarding Dr. Skolnick's opinions on present symptomology but agrees with defendant's argument regarding Dr. Skolnick's opinions on prognosis and causation. Dr. Skolnick's opinions on present symptomology will assist a jury in understanding the extent of plaintiff's current symptoms. However, Dr. Skolnick's opinions on prognosis and causation will not assist a jury because he does not explain how the accident caused or aggravated plaintiff's injuries to his neck and left upper extremity. His opinions on prognosis and causation consist of only net opinions. For example, Dr. Skolnick states, plaintiff's injuries are "directly and causally related to the accident" that occurred on February 11, 2016. However, nowhere in his report does Dr. Skolnick explain how plaintiff's fall resulted in injury to his cervical spine or left upper extremity. Further, Dr. Skolnick's opinion that plaintiff has been "unable to work in any regard" after the accident is false. See Skolnick Rep. at

11. Plaintiff passed the Coast Guard Physical and returned to work in the same position he was working before the incident just weeks after his fall.³ See Mot. Ex. 13-14. Therefore, Dr. Skolnick's report will not assist a jury in understanding and deciding the cause of his injuries.

This is not the first time Dr. Skolnick presents a court with an inadmissible net opinion. In Mahmood v. Narisco, No. 09-2656(DEA), 2012 WL 1067700, at *3 (D.N.J. Mar. 29, 2012). In Mahmood, Dr. Skolnick's report provided no basis for his conclusion that plaintiff could only perform sedentary work and, without reference to any medical or factual evidence, concluded that cervical fusion is indicated. Id. The court stated, "while such an opinion may be within his area of expertise, there are insufficient references in the Plaintiff's medical records and reports of other physicians to support this opinion." Id. Similarly, the Court finds Dr. Skolnick's opinions regarding prognosis and causation should be stricken because they are inadmissible net opinions.⁴ Like the court in Mahmood, this Court

---

³ As part of the paperwork for the Coast Guard Physical, plaintiff answered "no" when asked about any "back pain, joint problem, or orthopedic surgery" and denied any medical issue other than high blood pressure. Mot. Ex. 13. Further, the medical practitioner checked "normal" when asked about plaintiff's "upper/lower extremities."
⁴ See also Chapnick v. U.S., No. 07 Civ. 0577(BMC), 2009 WL 5511188, at *10 (E.D.N.Y. Sept. 2, 2009) (striking Dr. Skolnick's report because "there is no contemporaneous evidence of any kind proving that plaintiff suffered a shoulder injury");

16

finds there is not sufficient evidence in the record to support Dr. Skolnick's opinions on prognosis and causation.

In addition to Mahmood, the Superior Court of New Jersey determined Dr. Skolnick's opinions should be stricken in Beausejour v. Chamberlin Plumbing & Heating, Inc., A-1459-12T4, 2014 WL 300929, at *2 (N.J.Super. Ct. App. Div. Jan. 29, 2014). In Beausejour, plaintiff appealed a judgment of the Division of Workers' Compensation which dismissed his claim petition against respondent Chamberlin Plumbing & Heating for a pre-existing lower back condition allegedly worsened or aggravated by a work-related injury. Id. at *1. Dr. Skolnick provided an expert report after he examined appellant on one occasion. Id. at *2. Specifically, Dr. Skolnick opined that the accident aggravated and exacerbated appellant's pre-existing lumbar degenerative disc disease. Id. The court affirmed the lower court's ruling and found plaintiff failed to prove the exacerbation of his pre-existing condition was causally connected to the injury he sustained at work. Id. at 4. Similarly, Dr. Skolnick now provides an expert report based on his one interaction with

---

Pugliese ex rel. Pugliese v. Red Bank Armory, Inc., A-3715-11T4, 2013 WL 1492867, at *4 (N.J.Super. Ct. App. Div. Apr. 12, 2013) (striking Dr. Skolnick's report because he "offered no opinion pertaining to the propriety of supplying a walker for the use of skaters, or, indeed, any opinion at all relating to the walker that was used.").

plaintiff and fails to provide reasoning for his opinion that plaintiff's injuries resulted from the accident.

Therefore, the Court finds Dr. Skolnick's opinions regarding prognosis and causation fail the "fit" requirement because he provides no opinion that would assist a jury in understanding how the February 11, 2016 accident caused or aggravated plaintiff's neck or left upper extremity injuries. The Court also finds Dr. Skolnick's report contains false information such as his claim that "after this accident, [plaintiff] has been unable to work in any regard." See Skolnick's Rep. at 11. Further, Dr. Skolnick's report contains net opinions as he does not explain how he reaches his conclusions. Therefore, the Court finds Dr. Skolnick's opinions regarding prognosis and causation do not satisfy the "fit" requirement as they would not assist a jury.

Conclusion

The Court finds Dr. Skolnick's opinions regarding prognosis and causation leave too large a gap between the data presented and the conclusions rendered, and consequently, fail to satisfy Daubert's reliability and fit requirements. Therefore, Dr. Skolnick's opinions regarding prognosis and causation do not meet the Daubert admissibility standard and must be stricken. Dr. Skolnick's opinions regarding plaintiff's present

symptomology pass the Daubert admissibility standard and will not be stricken.

## Order

Accordingly, for the foregoing reasons,

IT IS HEREBY ORDERED this 5th day of November 2019, that defendants' "Motion to Preclude Plaintiffs' Liability Expert's Report and Testimony" [Doc. No. 13] is GRANTED in part and DENIED in part. Dr. Skolnick's opinions regarding prognosis and causation included within his November 27, 2018 liability expert report are hereby STRICKEN. The only opinions and testimony of Dr. Skolnick that will not be stricken are his findings and observations regarding plaintiff's physical examination.

s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Date: November 5, 2019